# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-IA-01472-SCT

*MISSISSIPPI DEPARTMENT OF MENTAL
HEALTH AND ELLISVILLE STATE SCHOOL*

*v.*

*DAKARI RONIES SHAW*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2009 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | WILLIAM GRAHAM |
| ATTORNEYS FOR APPELLEE: | S. WAYNE EASTERLING |
| | EUGENE COURSEY TULLOS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 10/14/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     After falling down steps at a state agency's fund-raising event, the plaintiff filed suit alleging negligence. Because the agency — in promoting the event — was immune from tort liability, we must reverse the trial court's denial of the agency's motion for summary judgment.

## BACKGROUND

¶2.     The Mississippi Department of Mental Health ("MDMH") operates the Ellisville State School, a school for persons who suffer from mental retardation. In 2004, the school's

administration decided to raise funds by operating "Camp Fear" — a Halloween event similar to a haunted house.

¶3.    In 2006, one of Camp Fear's activities included a cabin in which the participants ran around in the dark with strobe lights randomly robbing them of their night vision. Suddenly, a scary character called "Ring girl" would emerge from a "well" and send the participants fleeing outside onto a dark porch and down dark steps. Staffers with flashlights provided the only light. Dakari Shaw, a patron at the event, missed one of the steps, fell, and sustained serious injuries.

¶4.    Shaw filed suit against MDMH, alleging numerous acts of negligence. Claiming it was immune from tort liability for Shaw's injuries, MDMH moved for summary judgment. Without explanation apart from some boilerplate "not well taken" language, the circuit court denied the motion. MDMH petitioned for interlocutory appeal, which we granted.

**ANALYSIS**

¶5.    When reviewing a trial court's disposition of a motion for summary judgment, we must reach our own conclusions as to the applicable law and how it should be applied.[1] The same standard applies to "proper application of the Mississippi Tort Claims Act."[2]

*The Mississippi Tort Claims Act*

---

[1] *Mabus v. St. James Episcopal Church*, 13 So. 3d 260, 263 (Miss. 2009) (*citing Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, 180 (Miss. 2007)).

[2] *City of Jackson v. Powell*, 917 So. 2d 59, 68 (Miss. 2005).

¶6.    In the Middle Ages, it was generally understood that the sovereign King of England could do no wrong and was therefore immune from tort liability.[3] This common-law concept of sovereign immunity entered American law when we adopted the common law. And for many years, the State of Mississippi and its political subdivisions enjoyed complete immunity from tort liability.

¶7.    But in 1982, the Legislature relinquished some — but not all — of the state's sovereign immunity by enacting the Mississippi Tort Claims Act ("MTCA").[4] Members of our bench and bar readily admit difficulty in understanding the MTCA's cryptic dividing line between acts which continue to enjoy immunity and those which don't. Today, we attempt to bring some clarity to the issue.

¶8.    The MTCA begins by declaring: "The immunity of the state and its political subdivisions . . . is and always has been the law of this state . . . ."[5] Then, having established that the state enjoys sovereign immunity, the MTCA — up to an established monetary limit — waives the immunity.[6] Finally, having declared sovereign immunity and then waiving it, the MTCA reclaims the immunity for twenty-five categories of actions or inactions, one of which is "the exercise or performance or the failure to exercise or perform a discretionary function or duty." Specifically, the statute states:

---

[3] *See* Jim Fraiser, *Recent Developments in Mississippi Tort Claims Act Law Pertaining to Notice of Claim and Exemptions to Immunity Issues: Substantial/Strict Compliance, Discretionary Acts, Police Protection and Dangerous Conditions*, 76 Miss. L.J. 973, 974 (2007).

[4] *See* Miss. Code Ann. §§ 11-46-1 to 11-46-23 (Rev. 2002)

[5] Miss. Code Ann. § 11-46-3(2) (Rev. 2002).

[6] Miss. Code Ann. § 11-46-5(1) (Rev. 2002).

3

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

. . .

> (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;[7]

¶9.     So the MTCA requires that we first determine whether Shaw's lawsuit is "[b]ased upon the [MDMH's] exercise or performance or the failure to exercise or perform a discretionary function or duty" in its promotion of Camp Fear.

*Ministerial acts, discretionary acts, and other acts*

¶10.     Governmental acts can be ministerial, discretionary, or neither. Ministerial acts are not listed in the twenty-five categories discussed above, so they do not enjoy complete sovereign immunity. An example of a ministerial act is an action taken by a governmental entity or its employees in order to comply with a statutory mandate.[8]

¶11.     But discretionary acts do enjoy immunity. Just because a governmental act was not ministerial does not mean it was discretionary. In determining whether an act qualifies as an immune discretionary act, this Court adopted the United States Supreme Court's "public

---

[7] Miss. Code Ann. § 11-46-9 (1)(d) (Rev. 2002).

[8] *Dancy v. E. Miss. State Hosp.*, 944 So. 2d 10, 16 (Miss. 2006) (*citing* *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1141 (Miss. 1999)).

4

policy" approach.[9] Simply put, discretionary acts which enjoy immunity are those acts which promote some social, economic, or political policy. The **_Jones_** Court put it this way:

> Section 11-46-9 appears to be patterned after 28 U.S.C. § 2680(a), the "discretionary function" exception to the Federal Tort Claims Act. The United States Supreme Court has recognized that the majority of acts in the day-to-day operations of governmental activities involve the exercise of some form of discretion[;] however, not all of these acts are protected under the exception. In determining the scope of the acts protected under the exception, the Supreme Court held that only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected. **_United States v. Gaubert_**, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed 2d 335 (1991). "The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." **_Id._** at 323, 111 S. Ct. 1267 (*quoting* **_United States v. Varig Airlines_**, 467 U.S. 797, 814, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984)).[10]

¶12. In further explaining the proper analysis of discretionary-act immunity, this Court has said:

> In determining whether governmental conduct is discretionary the Court must answer two questions: (1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives.[11]

¶13. So we must now apply our precedent to the facts of the case before us to determine whether the promotion of Camp Fear qualifies for discretionary-act immunity. In doing so, it is important to note that immunity under the MTCA applies even in cases where the agency

---

[9] **_Jones v. Miss. Dep't of Transp._**, 744 So. 2d 256, 260 (Miss. 1999) (*quoting* **_United States v. Gaubert_**, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991) (adopting the two-part policy test)).

[10] **_Id._**

[11] **_Bridges v. Pearl River Valley Water Supply Dist._**, 793 So. 2d 584, 588 (Miss. 2001) (*citing* **_Jones_**, 744 So. 2d at 260).

is found to have abused its discretion.[12] While this may seem harsh, the MTCA's intent is to "promote efficient and timely decision-making [by government officials] without fear of liability. This . . . works to encourage free participation and hinder fear that goes with risk-taking situations and the exercise of sound judgment."[13]

*Camp Fear*

¶14. Shaw makes no claim or argument that the promotion of Camp Fear was required by law and, thus, a ministerial function. Still, she asserts MDMH cannot establish that social, economic, or political policy considerations, as described in *Jones* and its progeny, drove the promotion of Camp Fear.

¶15. Shaw argues that Camp Fear constituted a "commercial enterprise" or a "commercial establishment," and "[o]bviously, one operating a commercial establishment not remotely connected to the statutory mission of the institution cannot take advantage of the exemption." Shaw provides no authority for this statement.

¶16. Indeed, Camp Fear was one of the school's fund-raising efforts, and the proceeds furthered its mission of providing services for its clients. In deposition testimony, Susan Mangum — Director of Vocational Services at the school and prime mover behind Camp Fear[14] — described the planning process. She met with her supervisor, who authorized her to create the program. She set up a steering committee consisting of herself, the school's

---

[12] Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2002).

[13] *Miss. Dep't of Transp. v. Cargile*, 847 So. 2d 258, 268 (Miss. 2003) (*citing **Brazeale v. Lewis***, 498 So. 2d 321, 322 (Miss. 1986)).

[14] Q: "[W]hose concept was it?" A: "Mine."

6

"recreation staff," and "a few others." They planned the fund-raiser to aid in fulfilling the school's purpose of providing care for, and treatment of, mentally retarded persons.

¶17. We find helpful the following discussion of the distinction between decisions that are, and are not, grounded in policy:

> [T]he decision by a bus driver to allow a claimant to exit a school bus at a particular intersection does not implicate policy, and is merely a judgment call, and thus not immunized by this exemption. However, a school board's decision to allow children to de-board buses during thunderstorms, at busy intersections, during nuclear attacks, etc., is a policy decision which may not be second guessed, even where ordinary care is not utilized by the board. Thus, if the board has decided that children may be let off at all intersections, then the driver's decision to do so is immunized as discretionary — i.e., as involving judgment-plus-policy considerations.[15]

¶18. Based on these precedents, and the provisions of the MTCA, we find the promotion of Camp Fear involved social and economic policy decisions and so was a discretionary function that qualifies for immunity under the MTCA.

**CONCLUSION**

¶19. The actions of the school administration in planning and staging Camp Fear were immune from tort liability. And under the MTCA, even if the school or its employees abused their discretion in the promotion and conduct of Camp Fear, the MDMH still enjoys immunity.[16] Therefore, we must reverse and render.

---

[15] Fraiser, *supra* note 3, at 989 (*citing* **Stewart v. City of Jackson**, 804 So. 2d 1041, 1048 (Miss. 2002)).

[16] The dissent would limit discretionary acts to the specific circumstances listed in the statute. Even if we agreed with the dissent's analysis, Shaw (who is an adult) could not recover because, as recognized by the dissent, "a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care . . . ." Miss. Code Ann. §11-46-9(Rev. 2002). One strains to imagine that running in the dark was not an obvious danger to Shaw.

7

¶20.   **REVERSED AND RENDERED.**

**WALLER, C.J., CARLSON, P.J., LAMAR AND PIERCE, JJ., CONCUR. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, KITCHENS AND CHANDLER, JJ.**

**GRAVES, PRESIDING JUSTICE, DISSENTING:**

¶21.   I disagree with the majority's holding that the Mississippi Department of Health's school in Ellisville, Mississippi, is immune from liability for the injuries suffered by the plaintiff. While governmental entities enjoy immunity from liability on claims based on specified circumstances, the circumstances in this case are not protected. Therefore, I respectfully dissent, and would affirm the trial court's order denying defendant's motion for summary judgment.

¶22.   Mississippi Code Section 11-46-9 delineates more than two dozen circumstances where "a governmental entity and its employees . . . shall not be liable for any claims." Miss. Code Ann. § 11-46-9 (Rev. 2002). However, the circumstances herein are not among those which are explicitly enumerated in the statute. Mississippi Code Section 11-46-9(1)(v) states in part:

> (1) A governmental entity and its employees acting within the course and scope of the employment or duties shall not be liable for any claim:
>
> . . .
>
> (v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care. . . .

Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2002).

¶23. In the instant case, the allegation is that there was a dangerous condition on the premises at Ellisville State School and that the dangerous condition was caused by the negligent or other wrongful conduct of an employee(s) of the school.

¶24. Inasmuch as the code section is lengthy and explicit in delineating those categories of circumstances where immunity exists, it is reasonable to conclude that if the Legislature had intended to provide immunity in circumstances where a dangerous condition is caused by a government employee, then it would have done so. *Shelter Mut. Ins. Co. v. Dale*, 914 So. 2d 698 (Miss. 2005).[17] It did not. Thus, I would find that the appellee is not entitled to summary judgment on the issue of immunity.

¶25. Accordingly, I must dissent, and would affirm the trial court's denial of MDMH's motion for summary judgment.

**RANDOLPH, KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**

---

[17]Quoting *Southwest Drug Co. v. Howard Bros. Pharmacy of Jackson, Inc.*, 320 So. 2d 776, 779 (Miss. 1975) for the principle that "where a statute enumerates and specifies the subject or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause."

9