MYERS, J.,
 

 for the Court:
 

 ¶ 1. Jason Farris sued the Mississippi Transportation Commission (MTC) for injuries he sustained when a dead tree located in the highway right-of-way maintained by the Mississippi Department of Transportation (MDOT)
 
 [1]
 
 fell on his vehicle.
 
 *1242
 
 Following a bench trial in the Lee County Circuit Court, the trial court granted MDOT a judgment of dismissal based on a finding that MDOT could not be held liable under the Mississippi Tort Claims Act (MTCA). Finding no error, we affirm.
 

 FACTS AND PROCEEDINGS
 

 ¶ 2. On July 13, 2003, Farris was driving north on Highway 371 in Lee County, Mississippi, when a portion of a dead pine tree located within MDOT’s right-of-way fell through the windshield of Farris’s pickup truck. A piece of the tree, measuring two to three inches in diameter, penetrated Farris’s lower abdomen causing Farris serious injuries. Doctors were able to repair much of the damage, but Farris continues to struggle with difficulties as a result of the accident.
 

 ¶ 3. Farris filed suit against MDOT, and a bench trial followed pursuant to Mississippi Code Annotated section 11^46-13(1) (Rev.2002). At trial, Farris presented expert testimony from Charles Williams, a forester, who inspected the remaining portions of the tree, more than fours years after the event. Williams opined that the pine tree was ten to twelve inches in diameter and had likely been dead for approximately six months at the time of the accident. Williams said that due to the visual effects associated with the decaying process, the pine tree would have stood prominent in the forest. But after looking at pictures taken of the fallen pine tree shortly after the accident, Williams could not say with certainty that the pine tree would have been readily observable to someone making an inspection by driving down the roadway.
 

 ¶ 4. After the close of Farris’s case-in-chief, MDOT moved for a judgment of involuntary dismissal. The trial court granted the motion, and it entered an order granting judgment in favor of MDOT.
 

 ¶5. In its order of dismissal, the trial court found that the dead pine tree grew more than thirty feet east of the paved portion of the roadway and approximately five to ten feet west of MDOT’s right-of-way marker. The area of the right-of-way from which the pine tree grew consisted of other trees and vegetation, and the area was not maintained by mowing. The trial court found no evidence that MDOT knew the existence of the dead tree prior to the accident, or that the tree constituted a known danger to those using the roadway. Evidence was presented that MDOT personnel traveled the highway in order to check for problems on the paved portion of the highway and the adjoined mowed section of the right-of-way. Witnesses for MDOT indicated that if they had known about the dead tree and had considered it a hazard to those using the roadway, it would have been removed. But the MDOT witnesses also testified that time and circumstances did not provide for inspection of the unmaintained portion of the right-of-way.
 

 ¶ 6. The trial court concluded that: maintenance of state roads is a discretionary function of MDOT, and MDOT is protected from liability of hazardous conditions of which it did not have notice. Accordingly, the trial court dismissed the case and denied all relief sought by Far-ris. This appeal followed.
 

 ¶ 7. Farris asserts two arguments on appeal. First, he contends that the trial court erred in finding that MDOT was immune pursuant to the discretionary-function exemption of Mississippi Code Annotated section ll-46-9(l)(d) (Supp.
 
 *1243
 
 2010).
 
 [2]
 
 Second, Farris argues that the trial court erred in not finding that MDOT waived its immunity under the dangerous-condition exception of section ll-46-9(l)(v) (Supp.2010).
 

 ¶8. Additional facts will be related, as necessary, in our discussion.
 

 STANDARD OF REVIEW
 

 ¶ 9. A trial judge sitting as trier of fact under section 11-46-13(1) is accorded the same deference with regard to his or her factual findings as that of a chancellor.
 
 Martin v. Franklin County,
 
 29 So.3d 862, 865 (¶ 8) (Miss.Ct.App.2010) (citation omitted). When considering a motion for involuntary dismissal under Rule 41(b) of Mississippi Rules of Civil Procedure, “the trial court should consider ‘the evidence fairly, as distinguished from in the light most favorable to the plaintiff,’ and the judge should dismiss the case if it would find for the defendant.”
 
 Ladner v. Stone County,
 
 938 So.2d 270, 273 (¶ 10) (Miss.Ct.App.2006) (quoting
 
 Century 21 Deep S. Props., Ltd. v. Corson,
 
 612 So.2d 359, 369 (Miss.1992)). The trial judge’s factual findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence.
 
 Martin,
 
 29 So.3d at 865 (¶ 8). Application of the MTCA is reviewed de novo.
 
 Miss. Dep’t. of Pub. Safety v. Durn,
 
 861 So.2d 990, 994 (¶ 7) (Miss.2003).
 

 DISCUSSION
 

 I. WHETHER MDOT’S FAILURE TO REMOVE THE DEAD PINE TREE FROM ITS RIGHT-OF-WAY FALLS UNDER THE DISCRETIONARY-FUNCTION EXEMPTION OF SECTION 11-46-9.
 

 ¶ 10. Farris argues that pursuant to Mississippi Code Annotated section 65-1-65 (Rev.2005), MDOT is required to “organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained highway system, so that said highways may be kept under proper maintenance and repair at all times.” Farris contends that according to MDOT’s Standard Operating Procedures (S.O.P.), MDOT is required to remove all trees more than four inches in diameter that are located within thirty feet of MDOT’s right-of-way. Accordingly, Far-ris maintains that MDOT cannot claim immunity in this case as it was obligated to remove the subject tree from its right-of-way.
 

 ¶ 11. The MTCA, per section Mississippi Code Annotated section 11^46-9(l)(d), provides immunity to a governmental entity and its employees “who perform (or decliné to perform) an action on the basis of ‘a discretionary function or duty whether or not the discretion be abused.’ ”
 
 Lee v. Miss. Dep’t of Transp.,
 
 37 So.3d 73, 78 (¶ 9) (Miss.Ct.App.2009) (quoting
 
 Willingham v. Miss. Transp. Comm’n,
 
 944 So.2d 949, 951-52 (¶8) (Miss.Ct.App.2006)). “[T]he MTCA’s intent is to promote efficient and timely decision-making by government officials without fear of liability.”
 
 Miss. Dep’t of Mental Health and Ellisville State Sch. v. Shaw,
 
 45 So.3d 656, 659 (¶ 13) (Miss.2010) (citation and internal quotation omitted).
 

 ¶ 12. In
 
 Shaw,
 
 the Mississippi Supreme Court reiterated the two-part test for determining whether the government’s conduct falls within the scope of the discretionary-function exception. The
 
 Shaw
 
 court said that:
 

 In determining whether governmental conduct is discretionary the Court must
 
 *1244
 
 answer two questions: (1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives.
 

 Id.
 
 at (¶ 12).
 

 ¶ 13. In
 
 Lee,
 
 this Court held once again that the exercise and performance on the part of MDOT in the maintenance of its highways is a discretionary function.
 
 Lee,
 
 37 So.3d at 77 (¶ 8). Section 65-1-65 does not “impose any specific directives ‘as to the time, manner, and conditions for carrying out ... MDOT’s duty in maintaining highways....”’
 
 Id.
 
 at 77 (¶ 9) (quoting
 
 Knight v. Miss. Transp. Comm’n,
 
 10 So.3d 962, 970 (¶ 27) (Miss.Ct.App.2009)). Rather, section 65-1-65 requires that MDOT use its judgment and discretion in carrying out that duty.
 
 Id.
 

 ¶ 14. Bill Jameson, District Engineer for MDOT, provided testimony that there are approximately 5,000 acres of right-of-way in Lee County, over the course of approximately 250 road miles which have to be inspected and maintained by fourteen employees assigned to Lee County. According to Jameson, the decision as to how many employees are assigned and available for work in a particular county is the result of joint input from MDOT and the State Personnel Board. The maintenance task to be performed by MDOT employees are governed, in part, by MDOT’s Maintenance and Field Operation Manual. Jameson testified that the Maintenance and Field Operations Manual contains guidelines with regard to the frequency of inspections, the number of persons conducting the inspections, and the method and mode of inspections. Jameson said that in carrying out these guidelines, “judgment calls” are often required.
 

 ¶ 15. The preface to MDOT’s S.O.P., which is contained in the Maintenance and Field Operation Manual, is consistent with Jameson’s testimony. S.O.P. No. MND-50-03-00-000 states at page one:
 

 PURPOSE: Quality standards are an important part of the Maintenance Management System because they define the way a highway should look or function as a result of the maintenance effort. Most maintenance activities cannot be quantitatively defined because they are so complex and diverse. Therefore, the standards are generally written descriptions of the completed activity rather than a measured value.
 

 The purpose of the quality standards is to provide guidance to a supervisor in the evaluation of work accomplishments and to establish a level of consistent maintenance service throughout the State.
 

 Changes in available funds, equipment or personnel will require adjustments in the standards from time to time. Consequently, these standard[s] do not establish legal criteria as they are intended to function primarily as a guide for maintenance activities. The judgment of trained maintenance personnel must be relied upon to the determine what methods and materials will best achieve the desired results in keeping with the prime objective of the department which is to provide the motorist with a safe smooth riding surface and an adequately signed, satisfactorily drained, well kept roadway in the most economical manner possible.
 

 ¶ 16. On page seven of the S.O.P., is a section entitled “ROADSIDE MAINTENANCE.” In this section, on page ten of the S.O.P., is a provision entitled “Timber and Brush Control,” and it provides the following:
 

 
 *1245
 
 All trees located on state highway rights of way within 30 feet from the edge of the traveled way, which are four inches or more in diameter are to be cut flush with the ground and removed from the right of way except: (1) those of historical value or of special community interest; (2) those of scenic value on the rights of way of low speed highways in urban or built up areas; (3) those stipulated to remain in place by provision in right of way deeds; (4) those which cannot be reached by an out-of-control vehicle; (5) those located on U.S. Highway No. 90 between the Bay of St. Louis and Biloxi Bay.
 

 Thick stands of trees and other trees which have shaded out vegetation cover may be gradually thinned and ultimately eliminated as this vegetative cover returns in areas in order that the necessity for costly erosion control work will be reduced or eliminated.
 

 ¶ 17. As mentioned, the trial court found that the subject pine tree was located more than thirty feet from the edge of the roadway. For the sake of thoroughness, we point out that the record is inconclusive as to how far, exactly, from the roadway’s edge the pine tree stood. Far-ris did not provide precise measurements as to the tree’s location during his case-in-chief. Instead, Farris’s expert, Williams, estimated by memory that the pine tree grew ten to twelve feet west of MDOT’s right-of-way marker. And the testimonies provided by MDOT’s witnesses only indicate that the width of MDOT’s right-of-way at this particular location is sixty feet from the “center line” of the two-lane highway. That said, this case does not turn on whether the subject pine tree grew within thirty feet of the edge of the roadway.
 

 ¶ 18. First, as a practical observation (this being despite the fact that MDOT provided little testimony with regard to this particular S.O.P. provision at trial), it is fairly obvious that the thirty-foot-elearance requirement is not contemplated as a demarcation point. According to the record, the subject pine tree was forty feet in length, and this stretch of highway is lined with similar pine trees. Neither this provision, nor any other provision contained in MDOT’s S.O.P., mentions tree height. Second, and more to the point, even though the provision contains obligatory language, it is qualified by a number of exceptions, which clearly require the use of judgment and discretion with regard to trees located within the thirty-foot area adjoining MDOT’s highways. Based on our reading of this provision, it is intended to operate as a general guideline, and it does not establish a mandatory requirement so as to deprive MDOT of its discretion.
 

 ¶ 19. As MDOT witnesses testified, MDOT has and will continue to remove dead trees from areas adjacent to its roadways that pose a danger to traveling motorists. But there is no statute, rule, regulation, or order that compels MDOT or its employees to inspect every existing tree alongside its highways in carrying out that plan. That no such requirement exists, is, as Jameson indicated, an economic decision, which we may not second guess.
 

 ¶20. Accordingly, we agree with the trial court’s finding that MDOT cannot be held liable for not having removed the dead pine tree at issue in this case. MDOT’s action (or inaction) falls within the scope of the discretionary-function exception provided by section ll-46-9(l)(d). This issue is without merit.
 

 II. WHETHER MTC WAIVED ITS IMMUNITY UNDER THE DANGEROUS-CONDITION EXCEPTION OF ll-46-9(l)(v).
 

 ¶ 21. Farris contends that he presented evidence that the pine tree had
 
 *1246
 
 been dead for six months, the condition of which would have made the tree noticeable to MDOT upon proper inspection. Farris, thus, argues that there is enough here to show that MDOT was on constructive notice that the pine tree constituted a dangerous condition.
 

 ¶ 22. In
 
 Knight,
 
 this Court explained that “where any of the immunities enumerated in section 11-49-9(1) apply, the government is completely immune from the claims arising from the act or omission complained of.”
 
 Knight,
 
 10 So.3d at 971 (¶ 33) (quoting
 
 Willing v. Estate of Benz,
 
 958 So.2d 1240, 1255 (¶40) (Miss.Ct.App.2007)).
 

 ¶ 23. Having found that MDOT’s conduct falls within the scope of the discretionary-function exception under section 11 — 46—9(l)(d), Farris’s argument that the dangerous-condition exception found under section llA6-9(l)(v) applies, must fail.
 
 Id.
 
 Therefore, this issue is also without merit.
 

 ¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The Mississippi Transportation Commission is the actual party opposing Farris. MDOT, however, maintains the highways “subject to the rules, regulations, and orders” of the MTC. See Miss.Code Ann. § 65-1-1 (Rev. 2005) and § 65-1-65 (Rev.2005). Because
 
 *1242
 
 the parties and the trial court repeatedly refer to MDOT rather than MTC throughout the case, this opinion hereinafter will also in order to avoid confusion.
 

 [2]
 

 . Both parties periodically refer to section 11-46-9 as "11-26-9” in their respective briefs on appeal. There is no such section in the Mississippi Code, and it is clear that both parties meant section 11-46-9.