BARNES, J., for the Court:
¶ 1. Mississippi Farm Bureau Casualty Insurance Company (Farm Bureau), Jimmy Moore, and John Lagrone filed suit in the Circuit Court of Lafayette County, seeking damages for a property destroyed by fire that was owned by Moore and Lagrone and insured by Farm Bureau. The court granted summary judgment in favor of the Mississippi Department of Mental Health (MDMH), holding that MDMH’s employee was exercising her discretion, and the MDMH is immune from liability pursuant to Mississippi Code Annotated section ll-46-9(l)(d) (Supp.2011) or part of the Mississippi Torts Claim Act (MTCA).
¶ 2. Notice of appeal was filed by Farm Bureau, Moore, and Lagrone. We affirm.
*783 FACTS
¶ 3. A rental house owned by Moore and Lagrone in Oxford, Mississippi, was totally destroyed by fire. Farm Bureau provided fire and casualty insurance coverage for the property. At the time of the fire, five adult individuals with developmental disabilities, clients of MDMH and North Mississippi Regional Center, occupied the house. The five residents signed the lease agreement. No one signed the lease on behalf of MDMH. MDMH employed Christie Beckwith Blount (Beckwith) as the direct care worker to assist the residents with their day-to-day living.
¶ 4. In her deposition, Beckwith repeatedly stated that she did not remember or know how the fire started. At the time the fire started, Beckwith was outside assisting the residents in preparing dinner, which included hamburgers and hotdogs cooked on the grill. There was a bottle of oil next to the stove. The french fries were to be cooked in a pan of oil, but the stove eye was not turned on. Beckwith planned on cooking the french fries; she did not tell anyone else to start them. Having heard a loud bang, Beckwith walked inside the house and discovered the kitchen area on fire with fire engulfing the areas near the stove and the bar, the back sidewall, and the floor. Beckwith later testified that she did not recall the location of the pan and oil after the fire. In the incident report prepared at the time of the fire, Beckwith stated that she thought someone had gone inside and turned on the stove without her knowledge. According to Lagrone’s deposition, the “fire department” determined the fire had started as a grease fire.
¶ 5. Beckwith, immediately after discovering the fire, began the fire evacuation plan for the house, including having one of the residents call 911 and having the residents meet her at a pre-designated location. The fire completely destroyed the house, but no one was injured.
¶ 6. Beckwith had worked with the North Mississippi Regional Center for several years and had undergone training. She had previously worked in a ten-person home where the residents lived in a more restricted and controlled environment.
¶ 7. The MDMH is the state agency responsible for providing services for the mentally ill, emotionally disturbed, alcoholic, drug dependant, and intellectually disabled persons in Mississippi. The Mississippi Legislature has specifically authorized MDMH’s board to “establish minimum standards and establish minimum required services for regional mental health and mental retardation commissions....” Miss.Code Ann. § 41 — 4—7(f) (Supp.2011). MDMH has jurisdiction and control of the North Mississippi Regional Center.
STANDARD OF REVIEW
¶ 8. Governmental entities are exempt from liability in certain situations under the MTCA’s section 11 — 46—9(l)(d). “[I]mmunity is a question of law and is a proper matter for summary judgment under” Rule 56 of the Mississippi Rules of Civil Procedure. Mitchell v. City of Greenville, 846 So.2d 1028, 1029 (¶ 8) (Miss.2003). This Court reviews findings concerning governmental tort immunity de novo. Fortenberry v. City of Jackson, 71 So.3d 1196, 1199 (¶ 7) (Miss.2011).
DISCUSSION
¶ 9. For determining if MDMH was entitled to tort immunity pursuant to section ll-46-9(l)(d), the circuit court must decide whether the acts and/or omissions of Beckwith were discretionary or ministerial. If the court finds the acts and/or omissions are discretionary, then there must also be a determination wheth *784 er the acts and/or omissions involve more than a mere hint of social policy. “The purpose of the exception is to ‘prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.’ ” Dancy v. E. Miss. State Hosp., 944 So.2d 10, 16 (¶ 17) (Miss.2006) (quoting United States v. Gaubert, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)).
¶ 10. In Fortenberry, the Mississippi Supreme Court stated:
The method of determining whether an act is discretionary or ministerial is well-settled. A duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the government entity or its employee. However, a duty is ministerial if it is positively imposed by law and required to be performed at specific time and place, removing an officer’s or entity’s choice or judgment. This Court employs the public-policy function test when determining whether an act of a governmental entity or its employee is discretionary. Under this test, the Court must answer two questions: 1) did the conduct or activity involve an element of choice or judgment; and if so, 2) did that choice or judgment involve social, economic, or political policy?
Fortenberry, 71 So.3d at 1199 (¶ 8) (internal citations omitted).
¶ 11. In granting MDMH’s motion for summary judgment, the circuit court made the following finding:
The purpose of the group home program was to allow residents to develop their capacities to the fullest extent in the least restricted environment possible. The program was designed to provide a home-like environment designed to foster independent living skills through supervision and training, serving each resident in such a way as to maximize their daily quality of life and enable them to live as fulfilling, independent and productive lives as possible.
Here, the North Mississippi Regional Center’s policy and procedures provided Ms. Beckwith as a direct care worker with discretion in supervising the residents of the home. Ms. Beckwith was exercising her discretion when the fire took place.
¶ 12. In this case, neither MDMH nor Beckwith was under any duty imposed by law regarding the residence. Neither MDMH nor its employee is a guarantor of any residence against fire. As the court found, Beckwith used her judgment and discretion to decide the degree and extent of independence to be provided to its residents-clients. While the fire was unfortunate, the discretionary function of the MTCA exempted MDMH from any liability for damages to the home, its owners, or its insurer.
¶ 13. In line with the legislative mandate to promulgate rules and regulations, the MDMH published the Alternative Living Arrangement (ALA) Handbook and the Policy and Procedure Manual for the North Mississippi Regional Center. Not surprisingly, these documents set forth the duties of Beckwith and precautions in order to prevent fires within the group home. Beckwith’s job was to assist the clients with day-to-day living and foster independent living. She was also there “in case of’ accidents or emergencies, but she was not expected to prevent them from happening absolutely. Additionally, nothing in the handbook states that Beckwith had to keep the clients within her eyesight constantly. The handbook states: “Appropriate client supervision is the primary duty of staff at all times.” (Emphasis added.) The hand *785 book expressly allows the staff to exercise judgment in determining “the degree of freedom or independent movement”; the clients at this group home were considered “advanced clients” moving toward total independence. Regarding food preparation, section 4.1.1.7.1 of the handbook states, in part, that it should be “visible to the staff’ and “[ujnder no circumstances should any group home client ever handle fuel of any type or any other flammable substance.” Beckwith testified the residents were not prohibited from cooking altogether; they could cook to a certain level for themselves, such as by using the microwave or making a sandwich on their own. On the evening of the fire, there was no evidence food preparation was not visible to Beck-with, or any resident had handled any flammable substance. Nor did Beckwith improperly order the residents to handle the oil which started the grease fire. The mere existence of a handbook did not change the nature of MDMH’s duty to its clients.
¶ 14. “Simply put, discretionary acts which enjoy immunity as those acts which promote some social, economic, or political policy.” Miss. Dep’t of Mental Health and Ellisville State Sch. v. Shaw, 45 So.3d 656, 659 (¶ 11) (Miss.2010). In this case, as the court found in its order, the policy of MDMH was to foster independent living skills in the residents.
¶ 15. Although Farm Bureau argues that “Beckwith failed to exercise due care by causing a dangerous condition when she left a pan of grease on the stove unattended,” there is no evidence in support of this contention. Beckwith specifically testified in her deposition that the cause of the fire was unknown, and no other person testified that Beckwith was responsible for the fire. There was no evidence the eye of the stove had been turned on before the fire and left unattended by Beckwith. Her deposition further explains the oil was in a bottle next to the stove, and the oil had not been put in the pan. Further, the Appellants offer nothing to counter this evidence. There is an absence of proof that any conduct or any act of an employee of MDMH caused the fire.
¶ 16. The circuit court was eminently correct in granting summary judgment pursuant to the MTCA and our cases interpreting the Act. For these reasons, the circuit court’s grant of summary judgment in favor of MDMH is affirmed.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J„ CONCURS IN RESULT ONLY.