ON WRIT OF CERTIORARI

CARLSON, Presiding Justice, for the Court:
¶ 1. Dr. Jerry Pratt slipped and fell down a set of stairs at the Gulfport-Biloxi Regional Airport. Pratt filed suit against the Gulfport-Biloxi Regional Airport Authority (GBRAA) in the Circuit Court for the First Judicial District of Harrison County, alleging negligence and claiming he suffered injuries as a result of the fall. GBRAA moved for summary judgment, claiming immunity under the Mississippi Tort Claims Act (MTCA), and the circuit court granted the motion. Pratt appealed, and we assigned the case to the Court of Appeals. The Court of Appeals, finding that genuine issues of material fact existed, reversed the trial court’s grant of summary judgment and remanded the case. GBRAA filed a petition for writ of certio-rari, which we granted. For the reasons discussed below, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Circuit Court for the First Judicial District of Harrison County.
FACTS AND PROCEDURAL HISTORY
¶ 2. While construction was underway at the airport, GBRAA borrowed a set of metal “airstairs” from Northwest Airlines to use as a temporary means of accessing the tarmac from the terminal. The air-stairs were placed at Gate 5, and certain modifications were made to attach the stairs and ensure passenger safety. Once passengers exited the terminal, there was no cover over the platform directly outside the door or over the airstairs. The air-stairs were metal and had a raised diamond pattern that was intended to provide traction and prevent slipping, according to the manufacturer. Out of an abundance of caution, GBRAA added anti-slip tape to the platform and the stairs. The anti-slip tape covered the entire width of the platform. On the stairs, GBRAA employees put a two-foot piece of anti-slip tape in the middle of each step. The stairs were four feet wide, so twelve inches of metal were exposed on each side of the anti-slip tape.
¶ 3. On October 24, 2004, Pratt was at the airport to board a flight, which was loading at Gate 5. Pratt exited the terminal and was directed to use the airstairs to access the tarmac. When he stepped outside, he noticed that it had begun to rain. He crossed the platform and approached the airstairs. Pratt took the first step by placing his left foot to the side of the anti-slip tape on the top step. He slipped and fell down the entire length of the stairs. On April 14, 2006, Pratt filed suit against GBRAA in the Circuit Court for the First Judicial District of Harrison County, claiming that GBRAA had failed to maintain the temporary metal stail-well in a reasonably safe condition and had failed to *71 warn him of a hidden dangerous condition.[1] GBRAA moved for summary judgment on the basis that it had immunity under the MTCA because the alleged dangerous condition was open and obvious to one exercising due care and the alleged acts or omissions of the airport were discretionary functions. See Miss.Code Ann. §§ 11-46-9(1 )(d), (g), and (v) (Rev.2002). The circuit court granted GBRAA’s motion for summary judgment. Pratt appealed, and we assigned the case to the Court of Appeals.
¶ 4. With a five-to-four vote, the Court of Appeals reversed and remanded, holding that “the presence of genuine issues of material fact preclude[d] summary judgment under both rationales.” Pratt v. Gulfport-Biloxi Reg’l Airport Auth, 97 So.3d 80 (¶ 1) (Miss.Ct.App.2011). The four dissenting judges opined that GBRAA’s placement of the anti-slip tape on the stairs was a discretionary function involving a policy decision, thus GBRAA was immune from liability under the MTCA.[2] After the Court of Appeals denied GBRAA’s motion for rehearing, GBRAA petitioned this Court for certiorari, which we granted.
DISCUSSION
¶ 5. Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Miss. R. Civ. P. 56(c). This Court applies a de novo standard of review to a circuit court’s grant or denial of summary judgment. Kilhullen v. Kan. City S. Ry., 8 So.3d 168, 174 (Miss.2009). This Court views the evidence “in the light most favorable to the party against whom the motion has been made.” Id. (quoting Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993)). However, the opposing party “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” Miss. R. Civ. P. 56(e).
¶ 6. The MTCA provides the exclusive remedy for claims against government entities. Miss.Code Ann. § 11-46-7 (Rev.2002). “Governmental entity” is defined as “the state and political subdivisions.” Miss.Code Ann. § ll-46-l(g) (Rev.2002). “Political subdivision” is defined as “any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any ... airport authority ...” Miss.Code Ann. § ll-46-l(i) (Rev.2002). It is undisputed that GBRAA is a political subdivision subject to the MTCA.
*72 ¶ 7. In the circuit court and Court of Appeals, GBRAA claimed that it was immune from liability because the relevant activity was a discretionary function and because the alleged dangerous condition was open and obvious to one exercising due care. See Miss.Code Ann. §§ 11 — 46— 9(l)(d), (g), and (v) (Rev.2002). In its petition for writ of certiorari, GBRAA has abandoned the “open and obvious” claim, so we will not address it here.
Whether GBRAA is entitled to immunity under the Mississippi Tort Claims Act, because the activity at issue was a discretionary function.
¶ 8. According to the MTCA, governmental entities are not liable for claims arising from discretionary functions, specifically, any claim:
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused; [or] ...
(g) Arising out of the exercise of discretion in determining whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental ser-viees[.]
Miss.Code Ann. §§ 11 — 46—9(l)(d), (g) (Rev. 2002). A two-part “public-policy function” test is applied to determine whether conduct is considered a discretionary function subject to immunity. Miss. Transp. Comm’n v. Montgomery, 80 So.3d 789, 795 (Miss.2012). “This Court first must ascertain whether the activity in question involved an element of choice or judgment. If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations.” Id. (internal citations omitted).
1. Whether the activity involved an element of choice or judgment.
¶ 9. The first step of the public-policy function test requires the Court to determine “whether the activity in question involved an element of choice or judgment.” Id. To make this determination, the Court must first ascertain whether the activity was discretionary or ministerial. Dancy v. E. Miss. State Hosp., 944 So.2d 10,16-18 (Miss.2006). A duty or an activity is discretionary if “it is not imposed by law and depends upon the judgment or choice of the government entity or its employee.” Montgomery, 80 So.3d at 795. A ministerial function is one “positively imposed by law and required to be performed at a specific time and place, removing an officer’s or entity’s choice or judgment.” Id.
¶ 10. At the summary judgment hearing, the parties agreed that the activity at issue — placing anti-slip tape on the temporary airstairs — was not a ministerial function, as there are no laws or regulations pertaining to this activity. The parties were correct that the act of placing anti-slip tape on the stairs would not be a ministerial function. However, that is not the “function” at issue. The function with which we are concerned is the operation of the airpoH. The state does not have a statutory obligation to provide and operate airports for its citizens. A decision by the state, county, municipality, or other governmental entity to operate an airport is discretionary. Therefore, barring a rule or regulation pertaining to a certain activity, decisions that are part of the airport’s day-to-day operations are also discretionary.
¶ 11. Protected discretionary functions can be made at the “operational or planning level” and include the “day-today decisions” made by governmental ac *73 tors. Willing v. Estate of Benz, 958 So.2d 1240, 1252-53 (Miss.Ct.App.2007) (citing U.S. v. Gaubert, 499 U.S. 315, 322, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). “Day-to-day management ... regularly requires judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level.” Gaubert, 499 U.S. at 325, 111 S.Ct. 1267. The United States Supreme Court has stated, “If the routine or frequent nature of a decision were sufficient to remove an otherwise discretionary act from the scope of the exception, then countless policy-based decisions by regulators exercising day-to-day supervisory authority would be actionable. This is not the rule of our cases.” Id. at 334, 111 S.Ct. 1267. Day-to-day operational decisions, such as actions taken while construction is underway, fall under the overall function of operating the airport. The fact that day-to-day decisions may be “routine or frequent” does not remove them from protection as discretionary functions attendant to the operation of the airport.
¶ 12. In Mississippi Department of Mental Health and Ellisville State School v. Shaw, 45 So.3d 656 (Miss.2010), this Court held that the operation of a fundraiser and the attendant duties was a discretionary function, and immunity was afforded to the state entity. The administration at Ellisville State School, which was operated by the Mississippi Department of Mental Health, hosted a haunted house as a fundraising event. Id. at 657. A participant fell down a set of stairs in a dark area of the haunted house and sustained injuries. Id. The participant sued the Mississippi Department of Mental Health and Ellisville State School. Id. In evaluating the claim, we did not focus on decisions such as whether to provide lighting, whether handrails should have been used, whether the premises were safe, or other specific aspects of the operation of the haunted house. The “function” at issue was the overall operation and promotion of the haunted house. Id. at 660. Because the fundraiser was not “required by law[,]” the decision to host the fundraiser and the attendant duties involved the choice and judgment of the school administration. Id.
¶ 13. In City of Jackson v. Doe ex rel. J.J., 68 So.3d 1285 (Miss.2011), the City of Jackson was sued by the mothers of two young girls who were sexually assaulted while playing at a public park. This Court held that operation of a city park was a discretionary function, and the city was entitled to immunity under the MTCA. Id. at 1288. Mississippi Code Section 55-9-29 gives a county or municipality the authority to create public parks, but creating a park is not mandatory. Id. (citing Miss. Code Ann. § 55-9-29 (Rev.2008)). The operation of a city park was not ministerial because there was no statutory obligation to provide a city park, nor were there any regulations dictating the manner in which a city park should be operated. Id. The decision to develop a city park and the operational decisions and activities attendant to the development and maintenance of the park involved choices and judgment of city officials and employees. Id.
¶ 14. This Court recognizes that there are many laws, rules, and regulations pertaining to aviation and airports, so not every day-to-day decision or activity at an airport will be discretionary. But in this ease, there are no statutes, rules, or regulations that specify how to use temporary metal airstairs or how to apply anti-slip tape. Therefore, the airport employees must use their own judgment in taking precautions to ensure safety when using *74 metal airstairs.[3] Because there is no statute or regulation pertaining to the specific activity in question, the decision to use the metal airstairs temporarily during construction and the decision to use anti-slip tape on those airstairs involved choices made by airport employees exercising their individual judgment. The overall function of operating an airport is discretionary, and the day-to-day operational activities at issue in this case involved choice and judgment, because there are no laws or regulations dictating how those activities are to be performed.
2. Whether social, economic, or political-policy considerations were involved.
¶ 15. If the Court finds that the activity was discretionary, the second step of the public-policy function test requires the Court to decide “whether that choice or judgment involved social, economic, or political-policy considerations.” Montgomery, 80 So.3d at 795. This Court has explained that the policy underlying the second part of the public-policy function test is that “state tort standards cannot adequately control those government decisions in which, to be effective, the decision maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness.” Dancy, 944 So.2d at 17 (internal citations omitted). “[T]his Court must distinguish between real policy decisions implicating governmental functions and simple acts of negligence which injure innocent citizens.” Id. at 17-18 (quoting Gale v. Thomas, 759 So.2d 1150, 1162 (Miss.1999)). Thus, discretionary conduct or decisions must involve considerations of public policy for discretionary-function immunity to apply.
¶ 16. In City of Jackson v. Doe ex rel. J.J., the statute that authorized creating a public park also provided that any project related to the development of a city park should “promote the public interest and welfare[.]” Miss.Code Ann. § 55-9-29 (Rev.2008). This Court found that “promoting] the public interest and welfare” satisfied the second part of the public-policy function test, and the city was entitled to immunity. Doe, 68 So.3d at 1288. Like city parks, the State is not required to provide an airport for its citizens. However, should an entity choose to operate an airport, it is subject to the Airport Authorities Law, which provides that the development, maintenance, and operation of an airport authority are “public and governmental functions, exercised for a public purpose and matters of public necessity.” Miss.Code Ann. § 61-3-83 (Rev. 2004). The powers of an airport authority are set out in Mississippi Code Sections 61-3-15 and 61-3-23, and were succinctly summarized in a recent Attorney General’s Opinion:
Section 61-3-15(e) provides that an airport authority may acquire and regulate equipment “for the comfort and accommodation of air travelers or for any other purpose deemed by the authority to be necessary to carry out its duties.” Section 61-3-15(h) goes on to say that *75 an airport authority may “enact and enforce ordinances, rules, regulations^] and standards for public safety, aviation safety, airport operations^] and the preservation of good order....” Finally, Section 61-3-2B authorizes an airport authority to “adopt, amend, and repeal such reasonable resolutions, rules, regulations!;,] and orders ... for the management, government, and use of any airport ...” In sum, the Legislature has granted airport authorities wide discretion in regulating airport operation.
Miss. Att’y Gen. Op. No. 2010-00323, 2010 WL 2795646 (June 11, 2010).[4] As the development of a city park to “promote the public interest and welfare” satisfied the public-policy function test in Doe, actions that are part of the airport’s operation, which are “for a public purpose and matters of public necessity,” would satisfy the second prong of the public-policy function test in this case.
¶ 17. In the Shaw case, the proceeds from the fundraiser aided the school in fulfilling its “purpose of providing care for, and treatment of, mentally retarded persons.” Shaw, 45 So.3d at 660. The decision to hold the fundraiser was made by program directors, and a steering committee was established to oversee the planning. Id. The decision to have the fundraiser involved social, economic, and policy considerations in furtherance of the school’s purpose to care for and treat mentally retarded persons, and the decisions were made by a governing body of sorts. Id. This Court determined that operating the fundraiser was “a discretionary function that qualifiefd] for immunity under the MTCA.” Id.
¶ 18. A regional airport authority, like GBRAA, is a public body “corporate and politic” that is governed by commissioners. Miss.Code Ann. § 61-3-7 (Rev.2004). Certainly, the airport authority’s decision to make improvements to the facility took economic factors into consideration. The use of the airstairs for temporary access to the tarmac, adding anti-slip tape to the stairs, and other decisions made during construction were for the convenience and safety of the airport patrons. These are daily operational decisions that fall under the overall operation of the airport. Like the operation of the city park in Doe and the haunted house in Shaw, GBRAA’s operation of the airport involves social and economic policy considerations, satisfying the second part of the public-policy function test. Thus, GBRAA is entitled to discretionary-function immunity under the MTCA.
CONCLUSION
¶ 19. The circuit court correctly granted summary judgment in favor of GBRAA. The overall function of operating an airport is discretionary. The day-to-day operational activities at issue in this case involved choice and judgment, because there are no laws or regulations dictating how those activities are to be performed. Further, GBRAA’s operation of the airport and the attendant day-to-day activities involved social and economic policy eonsider- *76 ations. Therefore, GBRAA qualifies for immunity under the MTCA. We reverse the judgment of the Court of Appeals and reinstate and affirm the trial court’s grant of summary judgment and entry of judgment in favor of GBRAA.
¶ 20. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CIRCUIT COURT FOR THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY IS REINSTATED AND AFFIRMED.
DICKINSON, P.J., LAMAR AND PIERCE, JJ., CONCUR. CHANDLER, J., DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.; KITCHENS, J., JOINS IN PART. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY CHANDLER, J. RANDOLPH AND KING, JJ., NOT PARTICIPATING.

. The parties agree that, in light of legislation passed post-Hurricane Katrina extending statutes of limitations in this district, Pratt’s Notice of Claim was timely served on GBRAA, as required by the MTCA. In addition, in the event that notice was not timely, the parties agree that the affirmative defenses of defective notice and statute of limitations were not raised before the trial court. This Court has held that the MTCA notice requirements are not jurisdictional and can be waived. Stuart v. Univ. of Miss. Med. Ctr., 21 So.3d 544, 550 (Miss.2009). Even if an affirmative defense, such as statute of limitations or insufficient process, is properly and timely raised in an answer, the defendant's failure to pursue the defense "coupled with active participation in the litigation process, will ordinarily serve as a waiver” of the defense. Grimes v. Warrington, 982 So.2d 365, 370 (Miss.2008) (quoting East Miss. State Hasp. v. Adams, 947 So.2d 887, 891 (Miss.2007)).

. The dissent was written by Presiding Judge Lee (now Chief Judge), and he was joined by Presiding Judge Myers, Judge Irving (now Presiding Judge), and Judge Barnes.

. The parties did not assert, and this Court did not find, any statute, rule, or regulation specifically pertaining to the use of temporary metal airstairs. Other courts have reached the same conclusion. See Martin ex ml. Heckman v. Midwest Exp. Holdings, Inc., 555 F.3d 806, 812 (9th Cir.2009) ("Airstairs are not pervasively regulated.... No federal regulation prohibits airstairs that are prone to ice over, or that tend to collapse under passengers’ weight. The regulations say nothing about maintaining the stairs free of slippery substances, or fixing loose steps before passengers catch their heels and trip.”); Spinrad v. Comair, Inc., 825 F.Supp.2d 397, 406 (E.D.N.Y.2011) (quoting Martin); Summers v. Delta Airlines, Inc., 805 F.Supp.2d 874, 887 (N.D.Cal.2011) (same).

. This Attorney General’s Opinion was written in response to a question posed by GBRAA regarding the airport’s decision to use a certain type of jet bridge. The Attorney General determined that the airport’s requirement of using "a particular type of jet bridge would likely fall within the realm of setting standards for public safety, aviation safety, and airport operations.” Miss. Att’y Gen. Op. No. 2010-00323, 2010 WL 2795646 (June 11, 2010). "While Attorney General's Opinions are not binding, this Court certainly may consider them.” Dialysis Solution, LLC v. Miss. State Dep't of Health, 31 So.3d 1204, 1215 (Miss. 2010) (citing Tupelo Redevelopment Agency v. Gray Corp., Inc., 972 So.2d 495, 509 (Miss.2007)).