# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01429-SCT

*SAMUEL WILCHER, JR.*

*v.*

*LINCOLN COUNTY BOARD OF SUPERVISORS
AND CITY OF BROOKHAVEN, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2016 |
| TRIAL JUDGE: | HON. DAVID H. STRONG, JR. |
| TRIAL COURT ATTORNEYS: | MARK T. FOWLER |
| | ROBERT O. ALLEN |
| | MATTHEW D. MILLER |
| | WILLIAM ROBERT ALLEN |
| | JESSICA SUSAN MALONE |
| | NICHOLAS KANE THOMPSON |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARK T. FOWLER |
| ATTORNEYS FOR APPELLEES: | ROBERT O. ALLEN |
| | JOHN CHADWICK WILLIAMS |
| | NICHOLAS KANE THOMPSON |
| | MATTHEW D. MILLER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 05/24/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. The trial court granted the Lincoln County Board of Supervisors' and the City of

Brookhaven, Mississippi's motions to dismiss Samuel Wilcher, Jr.'s personal injury suit,

finding both governmental entities enjoyed discretionary-function immunity. In doing so, the judge employed this Court's recently created "***Brantley***" test.[1]

¶2.     On appeal, we face head on one of the unintended but predicted consequences of ***Brantley***—that the test forces parties and judges to wade through an ever-deepening quagmire of regulations and ordinances to locate "ministerial" or "discretionary" duties, overcomplicating the process of litigating and deciding claims involving governmental entities. Unfortunately, this methodology, though well-intentioned, has over time proved unworkable. Instead of trying to retool the ***Brantley*** test to somehow make it workable, we concede this short-lived idea, which was meant to be a course correction, has ultimately led this Court even farther adrift. Because the ***Brantley*** line of cases has not fulfilled its purpose—getting our discretionary-function analysis back on track—we abandon this failed venture. We find it best to return to our original course of applying the widely recognized public-policy function test—the original Mississippi Tort Claims Act (MTCA) test first adopted by this Court in 1999 in ***Jones***.[2]

¶3.     Applying the ***Jones*** test to this case, we hold that Wilcher's claim that County and City employees negligently left an unfinished culvert installation overnight, without warning drivers they had removed but not yet replaced a bridge, is not barred by discretionary-function immunity. Wilcher is not trying to second-guess a policy decision through tort. He is seeking to recover for injuries caused by run-of-the-mill negligence.

---

[1] ***Brantley v. City of Horn Lake***, 152 So. 3d 1106 (Miss. 2014).

[2] ***Jones v. Miss. Dep't of Transp.***, 744 So. 2d 256 (Miss. 1999).

¶4.    Because, from the face of the complaint, the County and City are not immune, we reverse the grant of their motions to dismiss. We thus remand this case to the trial court for further proceedings consistent with this opinion.

## Background Facts and Procedural History

¶5.    According to Wilcher's complaint,[3] he was driving at night on Washington Street in Brookhaven when his vehicle suddenly crashed into a big hole. This "pit or ditch" was left in the road where the County and City were repairing or constructing a bridge. Wilcher had not been made aware the bridge was under construction. And there were no warning signs, flag persons, lights, or any other devices that would warn Wilcher the bridge or roadway was missing, closed, or under repair or construction. Wilcher's vehicle crashed into the hole, injuring Wilcher and damaging his vehicle.

¶6.    After giving the requisite statutory notice,[4] Wilcher sued the Lincoln County Board of Supervisors (County) and the City of Brookhaven (City) for negligence. Wilcher alleged both entities—who had been working jointly to replace the bridge with a culvert—had failed in their duty to warn motorists the bridge was closed or under construction.[5] This failure, he asserted, violated both entities' statutory duty under Mississippi Code Section 63-3-305 (Rev.

---

[3] When reviewing a motion to dismiss, we take the facts alleged in the complaint as true. **Scaggs v. GPCH-GP, Inc.**, 931 So. 2d 1274, 1275 (Miss. 2006).

[4] *See* Miss. Code Ann. § 11-46-11 (Rev. 2012).

[5] According to Lincoln County's motion to dismiss, the County and City were acting jointly to replace the bridge with a culvert. At the time of the accident, the bridge had been removed and the culvert installed, but the road going over the culvert had not yet been finished.

3

2013). It also fell below the required specifications of the "state manual,"[6] showing a reckless disregard for motorists' safety.

¶7. Both the County and City filed motions to dismiss, insisting Wilcher's claims were barred by the MTCA. Specifically, they argued the duty imposed by Section 63-3-305 was discretionary, thus entitling them to discretionary-function immunity. *See* Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012). The trial judge agreed and granted both motions to dismiss.

¶8. Wilcher timely appealed. And on appeal, we review de novo the trial court's dismissal based on MTCA immunity. ***Fortenberry v. City of Jackson***, 71 So. 3d 1196, 1199 (Miss. 2011) (applying de novo review to the question of MTCA immunity); ***Scaggs v. GPCH-GP, Inc.***, 931 So. 2d 1274, 1275 (Miss. 2006) (applying de novo review to a motion to dismiss).

## Discussion

### I. Discretionary-Function Immunity

¶9. Under the MTCA, the default rule is that political subdivisions like Lincoln County and Brookhaven are not immune from tort claims.[7] But the Legislature carved out several exceptions, reinstating immunity for certain types of claims. Miss. Code Ann. § 11-46-9(1). Relevant to this case is Section 11-46-9(1)(d). This particular section confers "discretionary-

---

[6] Wilcher was referring to the Manual on Uniform Traffic Control Devices (MUTCD), adopted by the State and referenced in Section 63-3-305.

[7] Through the MTCA, our Legislature waived "the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment[.]" Miss. Code Ann. § 11-46-5 (Rev. 2012).

4

function immunity." Under this provision, "A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(1)(d).

¶10. The language of this provision is clear enough, but understanding and applying it has at times proved difficult. The Federal Tort Claims Act was enacted decades before the MTCA. And because the MTCA's "Section 11-46-9 appear[ed] to be patterned after 28 U.S.C. § 2680(a), the 'discretionary function' exception to the Federal Tort Claims Act," this Court originally turned to the federal courts' substantial experience in dealing with discretionary-function immunity. *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 260 (Miss. 1999).

¶11. This Court found significant that "[t]he United States Supreme Court has recognized that [while] the majority of acts in the day-to-day operations of governmental activities involve the exercise of some form of discretion, . . . not all of these acts are protected under the exception." *Id.* Instead, "only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected." *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273, 113 L. Ed. 2d 335 (1991)). This is because "the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the

5

medium of an action in tort." *Gaubert*, 499 U.S. at 323, 111 S. Ct. at 1273 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S. Ct. 2755, 2765, 81 L. Ed. 2d 660 (1984)).

¶12. Agreeing that the purpose of discretionary-function immunity is not to protect *all* decisions by governmental employees involving some level of discretion but instead only those functions that by their nature are policy decisions, this Court adopted *Gaubert*'s "public policy function test." *Jones*, 744 So. 2d at 260. This test requires "determin[ing] whether governmental conduct is discretionary so as to afford the governmental entity immunity." *Id.* The public-policy function test has two parts. "This Court first must ascertain whether the activity in question involved an element of choice or judgment." *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 795 (Miss. 2012). If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations. *Id.* Only when both parts of the test were met did a government defendant enjoy discretionary-function immunity.[8]

## II.  *Brantley*

¶13. Four years ago, however, five members of this Court decided to abandon the two-part, public-policy function test. The *Brantley* majority claimed to have detected in Section 11-46-9(1)(d) "a requirement not present in the Federal Tort Claims Act." *Brantley v. City of*

---

[8]According to *Gaubert*, discretionary-function immunity "covers only acts that are discretionary in nature, acts that 'involve' an element of judgment or choice[.]" *Gaubert*, 499 U.S. at 322, 111 S. Ct. at 1273 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 1958, 100 L. Ed. 2d 531 (1988)). "Furthermore, even 'assuming the challenged conduct involves an element of judgment,'" that judgment must be "of the kind that the discretionary function exception was designed to shield"—i.e., it must involve "considerations of public policy." *Id.* at 322-23, 111 S. Ct. at 1273-74.

6

*Horn Lake*, 152 So. 3d 1106, 1112-13 (Miss. 2014). So the *Brantley* majority crafted a new and completely different test. The *Brantley* test directed the Court to first "consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial." *Id.* at 1114. "The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function." *Id.* at 1115. Conspicuously absent from this new test was any consideration of whether policy factored into the decision.

¶14.    *Brantley*'s stated intention was to create a more "workable rule" for when discretionary-function immunity applies. *Id.* at 1112. But in reality, the new test "marked an unwise and unworkable departure from longstanding precedent," and by failing to consider whether the activity in question involved policy, ignored the Legislative intent behind discretionary-function immunity. *Crider v. DeSoto Cty. Convention & Visitors Bureau*, 201 So. 3d 1063, 1067-70 (Miss. 2016) (Maxwell, J., concurring in result only). [9] This case is a poster child for these truths.

¶15.    Were we to apply *Brantley* here, we would start with arguably the broadest function possible—the placement of traffic-control devices, which Section 63-3-305 leaves to the discretion of the controlling political subdivision. But we could not stop there, as the trial court did. Instead, we would then have to scour the state manual. After that, we would have

_____

[9] *See also **Miss. Transp. Comm'n v. Adams***, 197 So. 3d 406, 416-18 (Miss. 2016) (Maxwell, J., concurring in result only).

7

to hunt for other regulations and ordinances to see if the narrower duty in question has somehow been "rendered ministerial."[10] This tedious and scattered quest exemplifies one of the major criticisms of **Brantley** analysis—that "it overcomplicates the process of litigating a claim and places the success of a claim on the ability of the injured party's attorney to sift through myriad and sometimes arcane regulations—creating extra layers of proof, *which may have little or no practical effect on the actual negligent act*." **Crum v. City of Corinth**, 183 So. 3d 847, 854 (Miss. 2016) (Randolph, P.J., concurring in result only) (emphasis added).

¶16.    Here, **Brantley** analysis would require this Court to take a deep dive into the Mississippi Code, the City of Brookhaven's Code of Ordinances, the Mississippi Standard Specifications for Road and Bridge Construction (a/k/a "Red Book"), and the Mississippi Administrative Code to justify what should be blatantly obvious. Both common sense and the common law dictate that if a road crew removes a bridge to install a culvert, leaves a giant hole overnight, and fails to either barricade or sufficiently warn about the gaping hole it created, then the entity in charge could be liable in tort if someone drives his car into the hole. This would certainly be true in the context of a premises-liability claim against a private property owner. So why should it be any different when the government owns or controls the premises? In other words, the government does not have the "discretion"—let

---

[10] *See* **Boroujerdi v. City of Starkville**, 158 So. 3d 1106, 1114 (Miss. 2015) (remanding plaintiff's claim so that he could have the opportunity to "prove that the City's alleged inaction in repairing the sewage system was related to a more narrow function made ministerial by statute, ordinance, regulation, or other binding directive").

alone legislatively conferred discretion—to create a dangerous condition and leave it exposed without warning.

¶17.    But the problems with *Brantley* run much deeper than just placing a hodgepodge of local ordinances and regulations front and center in our sovereign-immunity analysis.  As a result of *Brantley*, what the Legislature intended as a shield—discretionary-function immunity under Section 11-46-9(1)(d)—is flipped on its head and is being used as a sword. Parties are now citing *Brantley* to bring actions based solely on violations of statutes and/or local ordinances or regulations, which they argue impose "ministerial" duties.  *See Horton v. City of Vicksburg*, 2016-IA-1595-SCT (MTCA claim based on the city's alleged failure to enforce its local property-maintenance code).   But this practice is certainly not what the Legislature intended.  In fact, this approach is completely backwards.

¶18.    "Section 11-46-9(1) restores sovereign immunity." *Simpson Cty. v. McElroy*, 82 So. 3d 621, 624 (Miss. Ct. App. 2011).  "It does not in itself create duties." *Id.*  Furthermore, regulations do not create causes of action, and the MTCA does not grant a right to recover based on a mere violation of statute or regulation.  *Taylor v. Delta Reg'l Med. Ctr.*, 186 So. 3d 384, 390-91 (Miss. Ct. App. 2016).[11]  "[T]he general rule is that 'a mere violation of a statute or regulation will not support a claim where no private cause of action exists.'" *Id.* (quoting *Tunica Cty. v. Gray*, 13 So. 3d 826, 829 (Miss. 2009)).  Despite this, *Brantley*'s analysis wrongly zeroes in on applicable regulations and ordinances.  And if a regulation was

---

[11] This "Court will not find a private cause of action when there is no apparent legislative intent to establish one," and "the party asserting a right of action . . . [bears] the burden of establishing the required legislative intent." *Hill v. City of Horn Lake*, 160 So. 3d 671, 681 (Miss. 2015).

"ministerial," this Court began to presume that the alleged violation of that regulation or ordinance, itself, established a viable cause of action without even questioning if a claim would exist *without* the regulation.

¶19. Though its problems are aplenty, Justice Kitchens continues to defend **Brantley**. He insists "seasoned practitioners and jurists understand" that our law should be confusing. This, he suggests, "is what the lawyers who represent parties and the judges who sort through and decide complex legal issues, often involving myriad statutes, ordinances, and regulations, have done from time immemorial."

¶20. But whether a practitioner is long in the tooth, or fresh out of law school, it is obvious to all who have been involved in these cases recently that the **Brantley** approach is *unnecessarily* complex. It also improperly turns regulations into causes of action, and is not based on the text of Mississippi's Tort Claims Act. But perhaps the most practical truth is that it has made it little more than a gamble when lawyers advise clients whether they have valid tort claims or defenses in MTCA cases. And that is not how our law should operate.

¶21. Attorneys and parties should not have to wait until their case shakes out in the appellate courts to know what the law is. The very reason we apply *stare decisis* is "so that trial courts can make correct decisions and lawyers can properly advise their clients." **United Servs. Auto. Ass'n v. Stewart**, 919 So. 2d 24, 30 (Miss. 2005). And when attorneys are left unable to advise their clients on the applicability of discretionary-function immunity in the

wake of ***Brantley***, any *stare decisis* argument for upholding this newly crafted test is seriously undermined.[12]

¶22. Wilcher's complaint is evidence of the confusion ***Brantley*** has created. According to his factual allegations, the County and City removed a bridge and failed to warn oncoming motorists the road had not yet been replaced. These allegations support a common-law premises-based claim of failure to warn of a dangerous condition created by the County and City. Yet, Wilcher did not plead his claim as negligent failure to warn.[13] Instead, Wilcher apparently found the statutory duty that most closely fit the factual scenario. And he argued the County and City breached the ministerial duties the statute imposed. He then turned to the state manual. He did this to establish a claim that, should the broader statutory function be discretionary, the defendants still had violated mandatory regulatory duties. In other words, even though Wilcher's allegations support an obvious common-law negligence claim

---

[12] It is interesting that Justice Kitchens cites *stare decisis* to justify upholding ***Brantley***. There was no concern for *stare decisis* when the ***Brantley*** majority admittedly abandoned fifteen years of precedent. ***Boroujerdi***, 158 So. 3d at 1115-16 (Waller, C.J., dissenting).

[13] On appeal, the defendants emphasize Wilcher has not brought a common-law failure-to-warn claim, only a statutory one. But if there are any deficiencies in Wilcher's complaint, this Court must shoulder the blame. And just as in ***Boroujerdi***, "we find that it would be patently unfair to affirm [dismissal] in the [County's and] City's favor without [Wilcher's] having an opportunity to attempt to conform his complaint and proof to this Court's current approach to discretionary function immunity." ***Boroujerdi***, 158 So. 3d at 1114.

11

against the defendants, under **Brantley**, he was forced to present his claim as a statutory and/or regulatory violation.[14]

¶23. This leads us to the inescapable conclusion that, instead of being a course correction, **Brantley** has led this Court even farther astray. And this Court finds itself in a deep hole of our own making. But rather than try to dig our way out by further modifying the **Brantley** test, we find the better course is to put down the shovel. We thus abandon and overrule the **Brantley** line of cases and return to our original course of applying the widely-recognized, easily understood, public-policy function test.

### III. The Two-Part, Public-Policy Function Test

#### A. The Mississippi and Federal Discretionary-Function-Immunity Provisions Are Practically Identical

¶24. Though we admit **Brantley** and its progeny, though well-intended, were wrongly decided, Justice Kitchens *doubles down* on his position that we cannot return to **Jones** and the application of the two-part, public-policy function test. **Jones**, 744 So. 2d 256. To maintain this stance, he clings to what he perceives as a material distinction between our discretionary-function immunity provision, Mississippi Code Section 11-46-9(1)(d), and its corollary in the Federal Tort Claims Act, 28 U.S.C. § 2680(a). But in reality, there is no difference.

¶25. Just like the MTCA, the FTCA "covers actions for personal injuries 'caused by the negligent or wrongful act or omission of any employee of the Government *while acting*

---

[14] Of course, the violation of relevant statutes, ordinance, or regulations may be relevant to the question whether a governmental employee acted negligently. **Taylor**, 186 So. 3d at 391.

*within the scope of his office or employment.*'"[15]  **Sheridan v. United States**, 487 U.S. 392,

400, 108 S. Ct. 2449, 2455, 101 L. Ed. 2d 352 (1988) (quoting **Panella v. United States**, 216

F.2d 622, 623 (2d Cir. 1954)) (emphasis removed and added elsewhere).[16]  Under both

statutory schemes, if an employee was acting within the scope of his employment, then he

cannot be individually sued.  Instead, the plaintiff must sue the government employer, in

accordance with Mississippi or federal statute.  *Compare* 28 U.S.C. § 2679 *with* Miss. Code

Ann. § 11-46-7.  Conversely, if an employee was acting outside the scope of her

employment, then the plaintiff can only sue her individually.  The government employer

cannot be sued, and the *MTCA or FTCA do not apply*.[17]  This means Section 11-46-9(1)'s

---

[15] Indeed, it is a jurisdictional requirement for bringing an action under the FTCA that the alleged tortious conduct was committed while acting within the scope of employment. *E.g.,* **CNA v. United States**, 535 F.3d 132, 140 (3d Cir. 2008); **Lawrence v. Dunbar**, 919 F.2d 1525, 1528 (11th Cir. 1990).

[16] *See also* 28 U.S.C. § 1346(b) (authorizing federal lawsuits based on "claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment*" (emphasis added)); 28 U.S.C. § 2672 (authorizing the settlement of "any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency *while acting within the scope of his office or employment*" (emphasis added)); 28 U.S.C. § 2679(b)(1) ("The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment* is exclusive . . . ." (emphasis added)).

[17] *See* **Univ. of Miss. Med. Ctr. v. Oliver**, 235 So. 3d 75, 82-83 (Miss. 2017) (holding the MTCA did not apply to claim against police officers alleging they acted maliciously and thus outside the course and scope of their employment); **Leleux v. United States**, 178 F.3d 750, 757 (5th Cir. 1999) (dismissing a claim based on tortious conduct committed outside the scope of employment as "barred by the FTCA").

13

and Section 2680's reinstatements of immunity necessarily do not apply. Therefore, an employee being sued for actions outside the course and scope of his employment cannot take refuge in these provisions, because the entire Act has no application. *See Sheridan*, 487 U.S. at 400-01, 108 S. Ct. at 2455 (holding Section 2680(h) did not apply to claim against an "an off-duty serviceman, not acting within the scope of his office or employment"); *Oliver*, 235 So. 3d at 83 (holding defendant employees, whose alleged malicious conduct fell outside the course and scope of their employment, could not "claim one of Section 11-46-9(1)'s exemptions to liability applies").

¶26.   So, while the phrase "acting within the course and scope of their employment or duties" does limit discretionary-function immunity, it is inaccurate to say the federal counterpart has no comparable limitation. Taken to its logical conclusion, the *Brantley* position—that our immunity provision has an additional limitation—suggests that federal employees can claim sovereign immunity for actions taken outside the course and scope of their employment, when this is certainly not the case. According to the United States Supreme Court, the waiver-of-immunity exceptions provided under Section 2680 must "be construed to apply *only* to claims that would otherwise be authorized by the basic waiver of sovereign immunity." *Sheridan*, 487 U.S. at 400, 108 S. Ct. at 2455 (emphasis added). And the only claims authorized by the basic waiver of sovereign immunity are "actions for personal injuries caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Id.*

14

¶27. Both Section 11-46-9(1) and Section 2680 apply only to claims based on an employee's conduct while acting within the course and scope of his employment. The Federal statute, Section 2680, precludes any claim:

> based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Almost verbatim, the Mississippi statute, Section 11-46-9(1)(d), precludes any claim:

> [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]

So we are dealing with essentially the same immunity provision.

¶28. While *Brantley* claimed Mississippi's traditional test ignored the text of Section 11-46-9(1)(d), it is indeed the text—namely its inescapable similarity to Section 2680—that drives us to conclude *Brantley*'s new-found textual "distinction" between our discretionary-function provision and the federal version is simply nonexistent. Our Legislature did not draft Section 11-46-9(1)(d) in a vacuum. Instead, as even the *Brantley* majority had to acknowledge, the Legislature patterned Mississippi's immunity provision after its federal counterpart. *Brantley*, 152 So. 3d at 1112.[18]

¶29. Recognizing this, the *Jones* Court—far from being "pernicious"—reasonably looked to the United States Supreme Court for interpretive guidance and adopted its test for when

---

[18] If the language the Legislature chose is practically verbatim, does it not stand to reason that our Legislature intended to enact the same immunity provision *to provide the same type of immunity*? Why would our Legislature enact a similarly worded immunity provision if the intent was *not* to provide "discretionary-function immunity" as understood by Congress, the body which came up with the concept in the first place?

15

this provision applies. *Jones*, 744 So. 2d at 260 ("adopt[ing] the public policy function test" from *Gaubert*, 499 U.S. at 322, 111 S. Ct. at 1273). Reason also dictates that, in light of the fact the purported course corrections have proved more and more unworkable with every case, we should return to this test. The justification for why we had to abandon the *Gaubert* test—that our provision has an additional "acting within the course and scope" requirement—simply fails under scrutiny.

**B.      Return to the Traditional Public-Policy Function Test**

¶30.    Mississippi's public-policy function test has two parts. "This Court first must ascertain whether the activity in question involved an element of choice or judgment." *Montgomery*, 80 So. 3d at 795. If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations. *Id.* Only when both parts of the test are met does a government defendant enjoy discretionary-function immunity. This test, of course, presupposes the court has correctly identified "the activity in question"—the allegedly tortious act giving rise to the claim.

¶31.    The County and City insist the placement of traffic-control devices is a "discretionary function" under Section 63-3-305. But what the parties—and Justice Kitchens—miss is that the placement or lack of placement of a traffic-control device is not the government function being challenged. This is not a case, for example, where the plaintiff alleges the County or City decided against installing warning lights or signs at dangerous intersections, and that particular decision contributed to his accident with another vehicle. In such a scenario, it would be arguable that the plaintiff was trying to use his tort action to second-guess the

16

government's discretionary policy decision on how best to regulate traffic within the confines of the government's limited resources—something the discretionary-function provision was designed to curb.[19] *Gaubert*, 499 U.S. at 323, 111 S. Ct. at 1273-74. But again, that is not what Wilcher is claiming.

¶32. Here, the allegedly tortious act was the construction crew's alleged failure to barricade or warn against the significant drop-off in the road—a condition it created.[20] This alleged failure was not the result of noncompliance with Section 63-3-305. And applying the public-policy function test, it certainly was not the result of a policy decision. Rather, if indeed there was such a failure, it was the result of straight-up negligence.

¶33. We admit the public-policy function test is not perfect and has been misapplied in the past. We are particularly mindful of this Court's decision in *Pratt*, which stretched the bounds of "policy" beyond credulity. *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So.

---

[19] Nor it this a case about "road maintenance" in the broad sense. Like the decision to place traffic-control devices, the decision how best to use limited funds to maintain roadways very well could involve immunized policy decisions. But Wilcher is not claiming the County and City's decision to replace or not replace the bridge is what led to his injuries.

[20] Of course, the lack of immunity under one of Section 11-46-9(1)'s provisions does not preclude immunity under another provision. *See Fair v. Town of Friars Point*, 930 So. 2d 467, 471 (Miss. Ct. App. 2006) ("If any subpart of Mississippi Code Annotated § 11-46-9(1) applies, immunity exists."). But it is telling that the City and County can find no relief under Mississippi Code Section 11-46-9(1)(v)—the immunity provision specifically aimed at premises-liability claims. According to Wilcher's allegations, which we must take as true at this stage, the City and County negligently created a dangerous condition that was not obvious and that the City and County failed to adequately warn against. So subsection (v), which provides immunity for claims "[a]rising out of an injury caused by a [non-obvious] dangerous condition on property of the governmental entity" that was neither caused by a governmental employee's negligence or known about in time to adequately protect against or warn, does not apply. Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2012).

17

3d 68, 75 (Miss. 2012) (holding the placement of nonslip tape on tarmac stairs was an operational decision involving economic policy and was thus immune). And we agree with and adopt as part of our public-policy function analysis Chief Justice Waller's dissent from that case.

¶34. Because discretionary-function immunity "protects only governmental actions and decisions based on considerations of public policy," when "applying the discretionary-function exception, this Court must distinguish between *real policy decisions* implicating governmental functions and *simple acts of negligence* which injure innocent citizens." *Id.* at 76 (Waller, C.J., dissenting) (citations omitted) (emphasis added). Thus, "[w]hen reviewing whether a challenged action is afforded immunity, a court's focus is 'on the nature of the actions taken and whether they are susceptible to policy analysis.'" *Id.* (quoting *Gaubert*, 499 U.S. at 325, 111 S. Ct. at 1275).

¶35. Wilcher has alleged a "simple act[] of negligence," and not a real policy decision, caused his injury. Therefore, the County and City cannot take refuge in discretionary-function immunity.

## Conclusion

¶36. For the reasons stated in this opinion, as well as those voiced by the prior separate opinions pointing out *Brantley*'s well-meaning but unworkable approach, we abandon the test crafted in *Brantley* and return to the two-part, public-policy function test to determine when a claim against a governmental entity enjoys discretionary-function immunity.

18

Applying that test here, the allegedly tortious act did not involve a discretionary policy decision.

¶37.    We thus reverse the trial court's dismissal based on discretionary-function immunity and remand this case for further proceedings consistent with this opinion.

¶38.    **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, P.J. KITCHENS, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**COLEMAN, JUSTICE, CONCURRING:**

¶39.    I concur with the majority and write separately to explain further my decision to do so.

¶40.    In the nascent years of Mississippi's Tort Claims Act, the Court interpreted the Section 11-9-46(1)(d) phrase "discretionary function or duty" to protect "those governmental decisions in which, to be effective, the decision-maker must look to considerations of public policy and not merely to established professional standards or to standards of professional reasonableness." ***Robinson v. Indianola Mun. Separate Sch. Dist.***, 467 So. 2d 911, 915 (Miss. 1985).  Indeed, the ***Robinson*** Court noted that the "principle of immunity from suit for governmental bodies vested with discretionary authority was carried forward" by the Legislature when it adopted the Mississippi Tort Claims Act.  ***Robinson***, 467 So. 2d at 915. I concurred with the majority in ***Brantley v. City of Horn Lake***, 152 So. 3d 1106 (Miss. 2014), but there we failed to consider properly the weight of the above-identified precedent that squarely interpreted Mississippi's discretionary-immunity provision an a manner

19

consistent with our later adoption of the public-function test. In *Brantley* we failed to consider the binding precedent of *Robinson* and other early cases and failed to consider whether departing from them was justified despite the stabilizing influence of the principle of *stare decisis*.

¶41.    Further, I agree with the majority that the *Brantley* Court wrongly distinguished the Federal Tort Claims Act based on the perceived absence in the federal law of the "course and scope" limitation found in the Mississippi Tort Claims Act. *Brantley*, 152 So. 3d at 1112 (¶ 19). As the majority points out, the federal version does indeed contain a course and scope limitation.

¶42.    Accordingly, I concur with the majority opinion and its holding that overrules *Brantley*.

        **RANDOLPH, P.J., JOINS THIS OPINION IN PART.**

        **KITCHENS, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶43.    Mississippi Code Section 11-46-9(1)(d) provides that:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the governmental entity or employee thereof, whether or not that discretion be abused.

Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012). I agree with the majority that the Lincoln County Board of Supervisors and the City of Brookhaven are not immune and that the Circuit Court of Lincoln County erroneously granted the motions to dismiss. But because the majority returns this Court to the public policy function test, which we overruled

20

approximately three years and five months ago in ***Brantley v. City of Horn Lake***, 152 So. 3d

1106 (Miss. 2014), I respectfully concur in result only.

¶44.    In ***Brantley***, 152 So. 3d at 1116, we held that Section 11-46-9(1)(d) required us to

"abandon the public-policy function test, because its language does not limit the immunity

enjoyed in the exercise of a discretionary function to discretion involving policy judgments.

Instead, the statute requires only that the discretion be exercised in the course and scope of

the entity or employee's employment or duty." Today's majority exhumes the public policy

function test because federal courts, including the United States Supreme Court, have

construed the Federal Tort Claims Act, Title 28, Section 2680(a) of the United States Code,

to include "actions for personal injuries 'caused by the negligent or wrongful act or omission

*of any employee of the Government* while acting within the scope of his office or

employment . . . ." ***Sheridan v. United States***, 487 U.S. 392, 400, 108 S. Ct. 2449, 101 L. Ed.

2d 352 (1988) (quoting ***Panella v. United States***, 216 F. 2d 622, 623 (2d Cir. 1954))

(emphasis in original).[21]

¶45.    But, irrespective of the manner in which the federal courts see fit to interpret federal

statutes, Section 2680(a), which the majority says is no different from Section 11-46-9(1)(d),

reads as follows:

> Any claim based upon an act or omission of an employee of the Government,
> exercising due care, in the execution of a statute or regulation, whether or not
> such statute or regulation be valid, or based upon the exercise or performance
> or the failure to exercise or perform a discretionary function or duty on the part

---

[21] In neither ***Sheridan*** nor ***Panella*** did the United States Supreme Court apply the
public policy function test.

of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (Rev. 2012). Notably absent is the predicate requirement of Section 11-46-9(1)(d) that the governmental entity and its employees enjoy discretionary-function immunity only when the governmental entity and its employees are "acting within the course and scope of their employment or duties . . . ." *See Brantley*, 152 So. 3d at 1112 ("the Mississippi Tort Claims Act contains a requirement not present in the Federal Tort Claims Act . . . ."). That is not to say that "federal employees can claim sovereign immunity for actions taken outside the course and scope of their employment." Maj. Op. ¶ 26. The majority correctly relates that other sections of the United States Code restrict governmental immunity to the employees acting within the scope of their employment. The course and scope of the employment requirement is absent textually from Section 2680(a), itself.

¶46.    Even assuming, for the sake of argument, that the federal and Mississippi statutes are identical textually, the *Brantley* Court said that the judicial adoption of the public policy function test "imposed a restriction on immunity neither derived from nor contemplated by Mississippi's statutory language: that the activity in question 'involve[] social, economic, or political policy considerations.'" *Brantley*, 152 So. 3d at 1112 (quoting *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 795 (Miss. 2012) (citing *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 260 (Miss. 1999), *abrogation recognized by Doe v. Rankin Cty. Sch. Dist.*, 189 So. 3d 616 (Miss. 2015)).

¶47.    The United States Supreme Court had the benefit of legislative history when crafting the public policy function test: "[t]he legislative materials of the 77th Congress illustrate

22

most clearly Congress' purpose in fashioning the discretionary function exception." *United States v. Varig Airlines*, 467 U.S. 797, 809, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984). No such materials exist for this Court's consideration of legislative intent. By contrast, we have held that "[t]o determine legislative intent, the Court looks first to the language of the statute." *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011) (citing *Pinkton v. State*, 481 So. 3d 306, 309 (Miss. 1985)).

¶48.    The United States Supreme Court explained also that a "Government spokesman appearing before the House Committee on the Judiciary" said that Section 2680(a) was "'designed to preclude application of the act to a claim based upon an alleged abuse of discretionary authority by a regulatory or licensing agency—for example, the Federal Trade Commission, the Securities and Exchange Commission, the Foreign Funds Control Office, or Office of the Treasury, or others.'" *Varig Airlines*, 467 U.S. at 809. Our nation's highest court previously had considered a case involving "vast claims for damages against the United States arising out of a disastrous explosion of ammonium nitrate fertilizer, which had been produced and distributed under the direction of the United States for export to devastated areas occupied by the Allied Armed Forces after World War II." *Id.* at 810 (citing *Dalehite v. United States*, 346 U.S. 15, 73 S. Ct. 956, 97 L. Ed. 1427 (1953)). The plaintiffs charged the government with negligence on many levels: "the cabinet-level decision to institute the fertilizer export program, the failure to experiment with the fertilizer to determine the possibility of explosion, the drafting of the basic plan of manufacture, and the failure properly to police the storage and loading of the fertilizer." *Varig Airlines*, 467 U.S. at 811.

¶49. The Court held that the government was protected under the discretionary function exception, which it described as "'the discretion of the executive or the administrator to act according to one's judgment or best course'":

> It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

*Varig Airlines*, 467 U.S. at 811 (quoting *Dalehite*, 346 U.S. at 35-36). The *Varig* Court continued that "the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *Varig Airlines*, 467 U.S. at 813.

¶50. This Court, in adopting the public policy function test, employed language from the United States Supreme Court that is in nowise binding upon this state supreme court: "'[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256 (Miss. 1999). Well before *Jones* and well before *Varig* and well before Section 11-46-9(1)(d), this Court had said that:

> Judicial review of basic policy-making decisions continues to be regarded by many as inappropriate because courts have no standards by which to judge

24

such decisions. Judges and jurors are in no better position to evaluate the reasonableness of policy determinations than are those officials who are charged with making them. The reasonable man standard of tort law is not an appropriate measure for the political, social or economic desirability of government programs and the methods selected for pursuing them. State tort standards cannot adequately control those government decisions in which, to be effective, the decision maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness.

*Pruett v. City of Rosedale*, 421 So. 2d 1046, 1051-52 (Miss. 1982), *superseded by statute as recognized by* *Jackson v. Daley*, 739 So. 2d 1031 (Miss. 1999). Consistent with *Varig Airlines*, *Jones*, and *Pruett*, *Brantley* leaves to the legislative branch, at both the state and local levels, the public-policy-driven task of determining and controlling immunity.

¶51. Under the public policy function test, "the Court first determines 'whether the activity in question involved an element of choice or judgment[,]'" and, if so, 'whether that choice or judgment involved social, economic, or political-policy considerations.'" *Brantley*, 152 So. 3d at 1112 (citing *Montgomery*, 80 So. 3d at 795) (citing *Jones*, 744 So. 2d at 260). The majority accuses this justice of having "no concern for *stare decisis* when the *Brantley* majority admittedly abandoned fifteen years of precedent." Maj. Op. ¶ 21 n.12. But the *Brantley* Court carefully explained the rationale for abandoning the public policy function test:

This Court has examined the broad governmental function implicated by the suit to determine whether immunity applied, rather than the specific activity involved, in several prior cases. In the pre-*Little* case of *Pratt* [*v. Gulfport Biloxi Regional Airport Authority*, 97 So. 3d 68 (Miss. 2012)], a plurality of the Court determined that a municipality was entitled to discretionary-function immunity for a suit based upon the alleged improper placement of nonslip tape on temporary airstairs at a municipal airport. *Pratt*, 97 So. 3d at 75-76 (¶ 19). The plurality opined that the act of placing the tape on the stairs was

25

performed in furtherance of the discretionary function of a municipality's operation of an airport. *Id.* at 72 (¶ 10). The parties in that case had agreed that placing nonslip tape on airstairs "was not a ministerial function, as there [we]re no laws or regulations pertaining to th[at] activity." *Id.* The plurality concluded that, "barring a rule or regulation pertaining to a certain activity, decisions that are part of the airport's day-to-day operations are also discretionary." *Id.* Importantly, the plurality noted "that there are many laws, rules, and regulations pertaining to aviation and airports, so not every day-to-day decision or activity at an airport will be discretionary." *Id.* at 73 (¶ 14).

While it is true, as the dissent contends, that the plurality in *Pratt* applied the public-policy function test, it was clear that the overarching discretion involved with operating an airport was the dispositive factor in finding immunity. The plurality held that certain day-to-day decisions such as the placement of nonslip tape on airstairs fell "under the overall operation of the airport." *Id.* at 75 (¶ 18). The regional airport authority's "operation of the airport involve[d] social and economic policy considerations, satisfying the second part of the public-policy function test." *Id.* (emphasis added). Any concept of the sort of policy decisions implicit in deciding how to place nonslip tape on airstairs was completely subsumed by the fact that the decision to operate an airport was discretionary and implicated economic policy considerations. Clearly, this Court looked at the broad governmental function of airport operation implicated by the suit when it determined that discretionary-function immunity applied, rather than analyzing the specific activity of placing nonslip tape on stairs.

Further, in *City of Jackson v. Doe ex rel. J.J.*, 68 So. 3d 1285, 1288 (¶ 12) (Miss. 2011), in which Chief Justice Waller joined the majority opinion, this Court held that a city was not liable for a dangerous condition in one of its parks because the "operation of a city park is a discretionary function of the city." In so holding, the Court did not examine the specific conduct which had led to the injuries involved, i.e., maintaining the park in a reasonably safe condition. Instead, the Court stated that the "creation and operation of a city park is within the discretion of the municipality[,]" and thus immunity applied. *Id.* Again, the Court did not focus on the specific activity in question, but rather on the overarching function of the operation of a public park. So, while the dissent in the present case may argue that this approach arises from some novel understanding of the law, in actuality, this Court has been focusing on the function, rather than on the act, for some time now.

In *Pratt*, *Montgomery*, and *Little*, this Court recognized that, although a broad function, such as the operation of an airport, may be discretionary, or that road maintenance may be ministerial, within those functions may lie more narrowly defined duties which may be rendered ministerial or discretionary through other legislative enactments or through regulations. Accordingly, the language in *Little* which provides that the Court must look only at the function can be misunderstood. The Court first must consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial. The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function.

For example, in the context of *Pratt*, operators of an airport are, of course, required to conduct security screenings of passengers who are attempting to board airplanes. A municipality's decision to operate an airport may be discretionary; but once that discretion has been exercised to operate the airport, the municipality must comply with security regulations promulgated by the Transportation Security Administration. In this way, it is useful to think of the operation of an airport as an overarching discretionary function that shelters several narrower functions or duties, many of which, such as the provision of security and compliance with federal security regulations, are ministerial.

*Brantley*, 152 So. 3d at 1113-1115.

¶52. The public policy function test provides no guidance with regard to whether the overarching function, discussed in the cases mentioned by *Brantley*, or the narrower duties associated with the overarching function involved an element of choice or judgment, and, if so, also involved social, economic, or political-policy considerations. Under the public policy function test, this Court first had to consider whether to look to the overarching function or the narrower duties associated with that function. So the public policy function test involved the same sort of "tedious and scattered quest" the majority accuses *Brantley* of having created and it certainly "made it little more than a gamble when lawyers advise[d] clients

27

whether they [had] valid tort claims or defenses in MTCA cases" causing attorneys and litigants to have to "wait until their case shakes out in the appellate courts to know what the law is." Maj. Op. ¶¶ 15, 20, 21. ***Brantley*** provided certainty: "this Court must look closely at any of the narrower functions or duties underlying the claim at issue and determine whether a statute or other regulation removes it from the umbrella of discretionary function immunity." ***Brantley***, 152 So. 3d at 1117.

¶53.   I turn to the case currently before the Court. Section 63-3-305 requires that:

> Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications.
>
> Local authorities in exercising those functions referred to in the preceding paragraph shall be subject to the direction and control of the state highway commission.

Miss. Code Ann. § 63-3-305 (Rev. 2013).

¶54.   In Section 63-3-305, the legislature mandates that local authorities place and maintain traffic control devices "upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic." Section 63-3-305 continues: "All such traffic-control devices hereafter erected shall conform to the state manual and specifications." The legislature incorporated by reference local traffic ordinances and the State manual and specifications and made those regulations mandatory once the local authority deemed it necessary to place and maintain traffic control devices. Lincoln County,

28

in its motion to dismiss, stated that the company it had hired to remove the bridge and replace it with a culvert pipe "had removed the old bridge, inserted the culvert pipes, and was in the process of covering the culvert pipes at the end of the day," but that "[t]here was a drop off left," so the company "placed a homemade barricade across the south end of the road warning the public that the bridge construction was not completed."

¶55. In *Brantley*, this Court explained that:

> Our holding in *Little* stands for the principle that all acts in furtherance of a ministerial function lack immunity notwithstanding that the act itself may involve an element of discretion. That said, while one statute may render a broad function ministerial, another statute or regulation may render a duty involved with that function discretionary, thus allowing the performance of such a duty to enjoy immunity.[22] And clearly, the converse must be true, such that narrower duties encompassed in a broad discretionary function may be rendered ministerial through statute or regulation.

*Brantley*, 152 So. 3d at 1113. This Court held that "a plaintiff may defeat sovereign immunity, even when a governmental entity's act furthered a discretionary function or duty, when the plaintiff proves that the act also furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority." *Id.* at 1115.

---

[22] The Court here incorporated the following footnote in *Brantley*:

> Such was recognized by this Court in *Montgomery*. "Occasionally . . . the Legislature will mandate that a political subdivision fulfill some particular function, but then specifically set forth that some portion or aspect of that function is discretionary. When that happens, acts fulfilling the discretionary portion of the governmental function enjoy immunity." *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 798 (¶ 31) (Miss. 2012).

*Brantley*, 152 So. 3d 1106, 1113 n.3.

¶56.   In *Boroujerdi v. City of Starkville*, this Court observed that:

> The duty to maintain a sewage system is not imposed by law upon municipalities. The language of [Mississippi Code] Section 21-27-189 [(Rev. 2007)] explicitly leaves it to the discretion of municipalities whether and how to maintain their sewage systems, if any. Accordingly, sewage maintenance, as a general function, is discretionary. This, in fact, is similar in principle to the statute [(Miss. Code Ann. § 41-55-1 (Rev. 2013))] rendering a city ambulance service a discretionary function in *Brantley*. Our task now, pursuant to our holding in *Brantley*, is to consider whether there are narrower functions or duties concomitant to the general discretionary function of sewage maintenance that have been rendered ministerial through statute, ordinance, or regulation.

*Boroujerdi v. City of Starkville*, 158 So. 3d 1106, 1112 (Miss. 2015). This Court referenced the Federal Water Pollution Control Act and regulations from the Mississippi Department of Environmental Quality to find that, "[c]learly, although the legislature granted to municipalities the discretion to maintain their sewage systems initially, there remain many statutes and regulations which render ministerial certain more narrow functions of sewage-system maintenance." *Id.* at 1113. "[I]f Boroujerdi can prove that the City's alleged inaction in repairing the sewage system was related to a more narrow function made ministerial by statute, ordinance, regulation, or other binding directive, then he may proceed with his claim." *Id.* at 1114.

¶57.   In *Mississippi Transportation Commission v. Adams*, this Court held that, while Mississippi Code Section 63-3-303 is discretionary, the Mississippi Transportation Commission's adoption of the *Mississippi Standard Specifications for Road and Bridge Construction* (the "Red Book") imposed narrower ministerial duties on the Mississippi Transportation Commission entitling the plaintiff to proceed with her claims. *Miss. Transp.*

30

***Comm'n v. Adams***, 197 So. 3d 406, 413 (Miss. 2016). Citing ***Brantley***, the ***Adams*** Court observed that "the function here presents 'the converse' principle that ***Brantley*** discussed: placement and maintenance of traffic-control devices is discretionary, unless narrower duties encompassed in that function—such as placing and maintaining edge lines—have been 'rendered . . . ministerial through statute or regulation.'" ***Id.*** (quoting ***Brantley***, 152 So. 3d at 1113).

¶58.    Here, Section 42-85 of Brookhaven's Code of Ordinances states that:

> The permittee shall . . .  ensure that any work . . . which is left overnight or in an unfinished condition at any time when construction is not actually occurring or during actual construction is made safe, which shall minimally include the placement of danger or warning lights and barricades as required by any applicable or governing safety or traffic codes, regulations, and laws and in accordance with the Manual on Uniform Traffic Control Devices.[23]

Brookhaven, Miss., Code § 42-85 (2017). Section 42-87 provides:

> At all times, including the non-work and overnight hours, the permittee shall be responsible for the safety of the area where any excavation, unfinished fill or any obstruction of any kind whatever is placed in any street, alley, sidewalk, or right-of-way and permitted to remain or exist. Such area shall minimally be marked with good and sufficient danger or warning lights, with barricades, and in such a manner as to plainly show or reveal the place and extent of such excavation, unfinished fill or obstruction. Danger or warning lights shall be erected and illuminated not later than sunset of each evening and kept burning continuously until sunrise the next morning. The placement, type, and form of danger or warning lights and barricades and ensuring the safety of these areas shall be in accordance with any and all applicable or governing safety or traffic codes, regulations, and laws and with the Manual on Uniform Traffic Control Devices.

---

[23] Section 2B.58 of the Manual on Uniform Traffic Control Devices (2009) provides images of signs required to be displayed in order to indicate a road closure: "The ROAD CLOSED . . . sign should be installed where roads have been closed to all traffic . . . . The word message BRIDGE OUT may be substituted for ROAD CLOSED legend where applicable."

Brookhaven, Miss., Code § 42-87 (2017). The *Mississippi Standard Specifications for Road and Bridge Construction* (the "Red Book") requires:

> [W]arning signs in advance of all places on the project where operations may interfere with traffic and all intermediate points where the work crosses or coincides with the existing roadway. . . . All barricades, warning signs, lights, temporary signals, other protective devices, flaggers, and signaling devices shall meet or exceed the minimum requirements contained in the [Manual on Uniform Traffic Control Devices].

Red Book § 107.10 (2017).[24] Mississippi Administrative Code Section 37-1-26:00100-102 (2017) provides that "[s]igns and signals will be warranted, erected, and maintained in accordance with the guidelines of the Manual on Uniform Traffic Control Devices adopted by the Transportation Commission, as per Mississippi Code . . . 63-3-303 . . . ."

¶59.    As in *Adams*, "the function here presents 'the converse' principle that *Brantley* discussed: placement and maintenance of traffic-control devices is discretionary, unless narrower duties encompassed in that function—such as placing and maintaining edge lines—have been 'rendered . . . ministerial through statute or regulation.'" *Adams*, 197 So. 3d at 413 (quoting *Brantley*, 152 So. 3d at 1113). The local ordinances and State regulations referenced above impose ministerial (mandatory) duties upon the City of Brookhaven and on Lincoln County to erect warning barricades and lights and to place signs where construction affects an existing roadway.

---

[24]http://sp.mdot.ms.gov/Construction/Standard%20Specifications/2017%20Standard%20Specifications.pdf (last visited May 23, 2018).

32

¶60. The majority pontificates that, "[a]s a result of **Brantley**, what the Legislature intended as a shield—discretionary-function immunity under Section 11-46-9(1)(d)—is flipped on its head and is being used as a sword." Maj. Op. ¶ 17. But surely, in a context such as this, if what Wilcher has alleged is true (and we must consider it as such at the Mississippi Rule of Civil Procedure 12(b)(6) stage), the failure of the city and county to abide not only by the regulations mandated under State law but also by the ordinances which they themselves adopted, does not permit the application of discretionary-function immunity. If what Wilcher alleges is more likely true than not, the city's and county's nonfeasance removes the blanket of immunity. Conversely, local and State authorities may decide—even if a broad statute creates a mandatory duty and to the extent the legislature declines to impose narrower ministerial duties—to render discretionary whichever narrower functions or duties those authorities deems appropriate. The **Brantley** formula, in effect, makes it possible for the legislature and State and local authorities to control immunity, or the lack thereof, by making discretionary any narrower functions or duties which otherwise would have rendered them ministerial.

¶61. Because **Brantley v. City of Horn Lake**, 152 So. 3d 1106 (Miss. 2014), provides the most sensible and pragmatic approach to applying discretionary function immunity under Mississippi Code Section 11-46-9(1)(d) (Rev. 2012), I would hold fast to its dictates and, accordingly, respectfully concur with the majority in result only.

¶62. The majority decries **Brantley**'s forcing "parties and judges to wade through an ever-deepening quagmire of regulations and ordinances to locate 'ministerial' or 'discretionary'

33

duties, overcomplicating the process. . . ." Maj. Op. ¶ 2. Its predominant complaint about

***Brantley*** is that it "overcomplicates the process of litigating a claim and places the success

of a claim on the ability of the injured party's attorney to sift through myriad and sometimes

arcane regulations—creating extra layers of proof, which may have little or no practical

effect on the actual negligent act." Maj. Op. ¶ 15 (quoting ***Crum v. City of Corinth***, 183 So.

3d 847, 854 (Miss. 2016) (Randolph, P.J., concurring in result only)). But, upon this Court's

return to the public policy function test, litigants and courts will continue to be required to

"scour the state manual" and "hunt for other regulations and ordinances" in order to make

arguments about whether the activity in question involved any policy considerations. Maj.

Op. ¶ 15. Yet courts and litigants will enjoy no longer the certainty of knowing that if the

most narrow duty associated with an overarching function is discretionary, the government

has immunity; and if the most narrow duty associated with an overarching function is

ministerial, the government does not retain its immunity and the case can proceed. Moreover,

seasoned practitioners and jurists understand and accept that this is what the lawyers who

represent parties and the judges who sort through and decide complex legal issues, often

involving myriad statutes, ordinances, and regulations, have done from time immemorial; we

"scour" through an ever-deepening morass of material, solving people's problems and

searching for answers, undaunted by the volume or complexity of the issues. This is what we

do.

¶63.    The Mississippi Tort Claims Act itself can be a perplexing thing to understand, and

has, since its inception, been so recognized by Bench and Bar.  Particularly confusing, as

34

demonstrated by legion pre-**Brantley** pronouncements by this Court, have been the exceptions to outright governmental tort immunity found in cases in which negligence is alleged concerning the performance or lack of performance of ministerial, or mandatory, governmental duties. What **Brantley** did, in full accord with the Mississippi statute, was to clarify and make that process relatively simple and easy. In some cases, the **Brantley** analysis has upheld governmental immunity. In others, immunity has been found inapplicable.

¶64. And that process is not exactly a "recently created test," as the majority characterizes it. Maj. Op. ¶ 1. It has been in use since 2014. Today, a majority of the Court chooses to abolish it, primarily because, notwithstanding its simplicity, it is accused falsely of being too complicated. So much for *stare decisis.*[25]

**KING, J., JOINS THIS OPINION.**

---

[25] As discussed above, this Court clearly found the application of the public policy function test to have been "pernicious" in **Brantley**. This Court "has declined to continue applying an incorrect interpretation when we find that it is 'pernicious,' 'impractical,' or 'mischievous in . . . effect, and resulting in detriment to the public.'" **Bester v. State**, 188 So. 3d 526, 529 (Miss. 2016) (quoting **Payne v. Tennessee**, 501 U.S. 808, 828, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991) (internal quotations omitted)).